**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEALIX INFUSION THERAPY, INC., <br><br> Plaintiff, <br><br> v. <br><br> HHI INFUSION SERVICES, INC., <br><br> Defendant. | No. 10-CV-3772 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

This action was tried on the facts without a jury. Pursuant to Rule 52(a)(1), the Court's findings of fact and law are stated below.

**FINDINGS OF FACT**

1. Healix Infusion Therapy, Inc. ("Healix") is a Texas corporation with its principal place of business in Sugar Land, Texas.

2. HHI Infusion Services, Inc. ("HHI") is an Illinois corporation with its principal place of business in Burr Ridge, Illinois.

3. Healix and HHI are direct competitors and provide infusion therapy and pharmacy services to medical practices across the United States.

4. In June of 2007, Healix entered into a five-year contract with 3 Tree Infection Disease ("3 Tree"), a medical practice located in Burien, Washington, to provide infusion services.

5. Healix's deal with 3 Tree required 3 Tree to build an onsite pharmacy, which required 3 Tree to lease new space in close proximity to its existing medical office.

6. Healix's deal also required the onsite pharmacy to be staffed by a Healix

pharmacist who was to be leased back to 3 Tree.

7. The 3 Tree deal was Healix's first foray into the market in the State of Washington.

8. David Keller, M.D. ("Keller") and Chris Porter, ARNP ("Porter"), principals of 3 Tree, on behalf of 3 Tree, executed the Healix contract and personal guarantees on June 11, 2007.

9. While attending the October 4-7, 2007 Infectious Diseases Society of America Annual Meeting (IDSA) in San Diego, California, Porter met Landon Lackey ("Lackey"), Vice President of Sales and Marketing for HHI, at the HHI booth, and a discussion ensued regarding infusion services.

10. On October 17, 2007, Porter emailed Neil Stanton ("Stanton") of HHI informing Stanton that he wanted to fax necessary information to HHI to obtain a *pro forma*.

11. On October 19, 2007, Lackey emailed Porter HHI's Practice Information Form.

12. On October 30, 2007, Lackey emailed Porter regarding projections HHI prepared based upon information provided by Porter.

13. On November 13, 2007, Lackey emailed Porter HHI's presentation materials in anticipation of their discussion the following day.

14. Following their discussion on November 14, 2007, Lackey emailed Porter HHI's contract, fee schedule and company profile sheet, and noted that "The information requested will allow us to set Three Tree Infections Disease up as a client in our computer system."

15. On November 26, 2007, Lackey emailed Porter stating ". . . I believe we have all the necessary information to load your practice's profile into our pharmacy computer system . . ."

16.     The same day, November 26, 2007, 3 Tree terminated its contract with Healix, citing cost and other issues associated with building out the in-office pharmacy as the reason for termination.

17.     The termination letter was signed by both Keller and Porter.

18.     Immediately thereafter, HHI applied for its non-resident pharmacy license, which was received by the Washington Board of Health on November 29, 2007.

19.     On December 18, 2007, 3 Tree entered into a contract for infusion services with HHI.

20.     HHI's contract for services to 3 Tree did not contemplate an on-site pharmacy.

21.     In November 2009, HHI terminated its contract with 3 Tree, alleging non-payment.

22.     The UCC Financing Statement filed by Healix was not sufficient to give HHI actual notice of a contract for infusion services between Healix and 3 Tree, and knowledge of the Healix contract with 3 Tree cannot be imputed to HHI merely by HHI being in the same business as Healix and possibly reading a UCC filing.

23.     Porter's testimony on what he told Lackey at the IDSA conference was unreliable.  Porter's demeanor was unusual and his mannerisms disclosed many of the classic indicia of untruthfulness.  I conclude from my observation of Porter's demeanor that he had significant blanks in his recollection, which he tried to fill in by telling a story of what might have happened.

24.     The testimony of Dr. Keller was credible and it indicated that 3 Tree would not have performed under the contract with Healix under any circumstances.  Dr. Keller was profoundly uncomfortable with the financial obligations imposed by the contract and he would

not do what he needed to do to make the deal with Healix work regardless of HHI.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this case under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00.

2. Venue is proper because HHI resides in the Northern District of Illinois and the parties stipulated to transfer the case to this district.

3. Plaintiff failed to sustain its burden of proof.[1]

ENTER:

James B. Zagel
United States District Judge

DATE: November 29, 2012

---

[1] As I stated on the record on September 13, 2012, my ruling that Plaintiff failed to sustain its burden of proof is based primarily on factual findings 22, 23, and 24.